UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MARY BRASWELL, as Conservator of ) | |
| FRANK D. HORTON, Individually, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 3:08-0691 |
| v. ) | Judge Nixon |
| ) | Magistrate Judge Knowles |
| CORRECTIONS CORPORATION OF ) | Jury Demand |
| AMERICA, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS**

Pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e ("PLRA"), and Federal Rule of Civil Procedure 12, Defendant Corrections Corporation of America ("CCA") moves the Court to dismiss the Complaint filed by Plaintiff Mary Braswell ("Plaintiff"), as Conservator of Frank D. Horton ("Horton").

**I. FACTUAL BACKGROUND[1]**

Horton is a prisoner of the State of Tennessee. (*See* Complaint ¶¶ 2, 9). On the dates of the incidents alleged in the Complaint, Horton was confined at the Metro-Davidson County Detention Facility (the "Detention Facility"). (*Id*. ¶ 7). CCA operates the Detention Facility under contract with the Metropolitan Government of Nashville and Davidson County. (*Id*.).

Prior to incarceration, Horton suffered from various mental health diseases, including bipolar disorder and Attention Deficit Hyperactivity Disorder. (*Id*. ¶ 29). Following incarceration, Horton's mental health condition allegedly deteriorated. (*Id*. ¶ 38). Specifically,

---

[1] Of note, several factual allegations in the Complaint are either inaccurate or irrelevant to the pending lawsuit. (*See* Complaint). Because this is a Motion to Dismiss, CCA will not address inaccurate and/or irrelevant allegations in the Complaint.

Horton allegedly began to exhibit increasingly abnormal behavior -- initially using derogatory language and spitting on others and later engaging in physical altercations with other prisoners, throwing urine and feces, and exposing his genitalia. (*Id.*). According to Plaintiff, when Horton exhibited these abnormal behaviors, CCA punished Horton with cell restrictions, placing him in the Segregation Unit, and declined to provide mental health care and treatment to him. (*Id.* ¶ 45). Once placed in the Segregation Unit, Horton's mental health condition allegedly continued to deteriorate. (*Id.* ¶¶ 45, 51). Specifically, Horton allegedly refused to leave his cell in the Segregation Unit for recreation, showers, or visitation when provided the opportunity. (*Id.* ¶¶ 45, 51, 72). According to Plaintiff, from May 2007 through January 2008, Horton primarily remained in his cell in the Segregation Unit. (*Id.* ¶ 53, 55). During this time, Horton allegedly refused to clothe himself, shower, or communicate orally with CCA personnel in a comprehensible manner, instead appearing confused and disoriented. (*Id.* ¶¶ 56, 72). Notwithstanding this fact, CCA allegedly failed to diagnose and/or provide Horton appropriate mental health care and treatment. (*Id.* ¶ 73).

During this time, Plaintiff, Horton's Conservator and Grandmother, allegedly mailed a letter to Horton. (*Id.* ¶ 44). In response, CCA allegedly returned the letter to Plaintiff, declining to explain why Horton did not receive it. (*Id.*). Plaintiff contends she mailed the letter to Horton a second time. (*Id.*). Again, CCA allegedly returned the letter to Plaintiff without explanation. (*Id.*).

Ultimately, on April 11, 2008, Horton was transferred from the Detention Facility to the Charles Bass ("Charles Bass") Correctional Facility. (*Id.* ¶ 66). Thereafter, on April 30, 2008, Horton was again transferred from Charles Bass to the Lois M. DeBerry Special Needs Facility

("DeBerry Facility"). (*Id*. ¶ 69). Presently, Horton remains a prisoner of the State of Tennessee, incarcerated at the DeBerry Facility. (*Id*.).

As a result of the foregoing, Plaintiff filed the pending lawsuit against CCA, asserting Eighth Amendment, First Amendment, and intentional infliction of emotional distress claims. (*See* Complaint). For the reasons set forth below, Plaintiff's Complaint in its entirety should be dismissed.

## II.  LAW AND ARGUMENT

**A.  Plaintiff's Eighth and First Amendment Claims (Causes of Action II, III, and IV) Should Be Dismissed Because Plaintiff Failed to Exhaust His Administrative Remedies.**

The PLRA requires prisoners to exhaust all administrative remedies before filing suit in federal court. *See* 42 U.S.C. § 1997e(a); *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999). It provides: "No action shall be brought with respect to prison conditions under [Section] 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *See* 42 U.S.C. § 1997e(a).

To exhaust administrative remedies, a prisoner must pursue all levels of the administrative grievance process, including the filing of appeals. *See Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999). A prisoner may not simply fail to file a grievance or abandon the process and claim that he has exhausted his administrative remedies or that it is futile for him to do so. *Id*. Even more, a prisoner must exhaust administrative remedies before filing suit in federal court. *See Freeman*, 196 F.3d at 645; *Carruthers v. Mills*, No. 06-2259, 2007 WL 676718, at *2 (W.D. Tenn. Mar. 1, 2007).[2] A prisoner "cannot exhaust administrative remedies during the pendency of [a] federal [lawsuit]." *See Freeman*, 196 F.3d at 645; *Hayes v. Allgood*,

No. 3:07-0130, 2008 WL 413626, at *2 (M.D. Tenn. Feb. 13, 2008). Likewise, where the prison has an administrative process that will review the prisoner's complaint, the prisoner must exhaust under the PLRA, even if the grievance procedure does not provide for the relief sought in the federal action (*e.g.*, money damages). *See Booth v. Churner*, 532 U.S. 731, 732, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001).

The exhaustion requirements of the PLRA apply equally to Eighth Amendment and First Amendment claims. *See Jones Bey v. Johnson*, No. 03-2331, 2007 WL 2752341, at *2 (6th Cir. Sept. 21, 2007); *Bell v. Campbell*, No. 02-5149, 2002 WL 1808458, at *1 (6th Cir. Aug. 6, 2002); *Butler v. Gardner*, No. 00-4524, 2001 WL 1299000, at *1 (6th Cir. Aug. 9, 2001); *Mayhew v. Gardner*, No. 3:07-0129, 2008 WL 400423, at *1 (M.D. Tenn. Feb. 11, 2008).

A copy of the applicable Inmate/Resident Grievance Procedures from the Detention Facility, is attached to the Affidavit of Tracie Mathews ("Mathews Affidavit"). The Mathews Affidavit shows Horton's clear failure to exhaust. (*See* Affidavit of Tracie Mathews ("Mathews Aff.") ¶¶ 3-4). Specifically, Horton failed to file a single grievance regarding even one allegation in the Complaint. (*Id.*). Horton's failure to participate in the grievance process at the Detention Facility constitutes a failure to exhaust his administrative remedies. Dismissal of Plaintiff's constitutional claims is, therefore, warranted. *See* 42 U.S.C. § 1997e(a); *Freeman*, 196 F.3d at 645.[3]

---

[2] All unpublished opinions are attached hereto as collective Exhibit A.

[3] Horton's transfer to the DeBerry Facility does not impact his obligation to exhaust his administrative remedies. Notwithstanding his transfer to the DeBerry Facility, Horton remains a "prisoner," as defined by the PLRA, and must, therefore, exhaust his administrative remedies. *See Ruggiero v. County of Orange*, 467 F.3d 170, 176-77 (2d Cir. 2006); *Hall v. Richardson*, No. 05-11016, 2005 WL 1939431, at *1 (11th Cir. Aug. 15, 2005); *Medina-Claudio v. Rodriguez-Mateo*, 292 F.3d 31, 34-35 (1st Cir. 2002); *Aguilar v. Sedillio*, 06-CV-02329-EWN-KLM, 2008 WL 791941, at *6, n. 10 (D. Colo. Mar. 20, 2008); *Watkins v. Guilford County Sheriff's Dept.*, No. 1:06CV995, 2007 WL 4939049, at *3 (M.D.N.C. July 5, 2007); *Hargrove v. Riley*, No. CV-04-4587, 2007 WL 389003, at *9 (E.D.N.Y. Jan. 31, 2007); *Rodriguez v. Senkowski*, 103 F. Supp. 2d 131, 134 (N.D.N.Y. 2000).

Plaintiff may claim that the PLRA's exhaustion requirement is excused by Horton's alleged mental incompetence. The PLRA, however, "does not contain any exceptions to the statutory exhaustion requirement, and a court does not have discretion to excuse exhaustion in the interests of justice." *See Bovarie v. Giurbino*, 421 F. Supp. 2d 1309, 1312 (S.D. Cal. 2006); *see also* 42 U.S.C. § 1997e(a); *Booth*, 532 U.S. at 741, n. 6 ("[W]e stress the point . . . that we will not read futility or other exceptions into statutory exhaustion where Congress has provided otherwise."); *see generally Arbuckle v. Bouchard*, No. 03-1975, 2004 WL 542170, at *2 (6th Cir. Mar. 16, 2004) ("[Plaintiff's] argument that he was not required to exhaust his administrative remedies because he faced a risk of immediate harm is without merit. The PLRA does not excuse exhaustion for prisoners under imminent danger of serious physical injury."); *Cox v. Mayer*, 322 F.3d 422, 427 (6th Cir. 2003) ("Significantly, both the Supreme Court and [the Sixth Circuit] have recently declined to carve out exceptions to the plain language of [the PLRA]."); *Turner v. Grant County Detention Center*, No. 05-148-DLB, 2008 WL 821895, at *6 (E.D. Ky. Mar. 26, 2008) ("Case law suggests that the filing standards set forth in the PLRA should not be cavalierly set aside." "Rather, precise adherence to what might otherwise be viewed as the [PLRA's] more exacting requirements appears to be the order of the day."); *Cochran v. Caruso*, No. 1:07-CV-228, 2008 WL 397597, at *5 (W.D. Mich. Feb. 11, 2008) ("The statutory exhaustion requirement does not provide an exception for medical claims or exigent circumstances.").

*White v. Braxton*, No. 7:07-CV-00242, 2007 WL 4305642, at *1 (W.D. Va. Dec. 7, 2007), is instructive in this context. In *White*, Plaintiff was confined at the Red Onion State Prison ("ROSP"). *Id.* Prior to incarceration, Plaintiff suffered from various mental health diseases. *Id.* Following incarceration, Plaintiff's mental health condition allegedly deteriorated,

causing him to exhibit increasingly abnormal behavior.  *Id*.  Specifically, Plaintiff heard voices, was "touched and attacked by unknown things in his cell," suffered an inability to control his speech and thoughts, experienced a loss of memory, and observed visions and hallucinations.  *Id*.  On one occasion, Plaintiff suffered a psychotic episode wherein he placed a sign in his cell window, which contained an image of male genitalia and read "break in case of emergency."  *Id*.  At the same time, Plaintiff emptied his consumable commissary items into his toilet and completely disrobed.  *Id*.  In response, ROSP personnel escorted Plaintiff to the mental health unit.  *Id*.  Once in the mental health unit, Plaintiff was allegedly denied basic hygiene needs, threatened by ROSP personnel, and denied the use of a bathroom, water, and adequate food.  *Id*.  On a second occasion, Plaintiff again suffered a psychotic episode wherein he heard voices, which caused Plaintiff to urinate on his dinner tray and spread feces in the tray slot of his cell.  *Id*.  In response, ROSP personnel placed Plaintiff in restraints and allegedly left Plaintiff in an empty cell for two days.  *Id*.  While in the empty cell, Plaintiff hallucinated a "small talking face" on his cell wall and a "two inch thick haze" on his cell floor.  *Id*.  Following these and other incidents, an ROSP mental health professional evaluated Plaintiff.  *Id*.  According to Plaintiff, the mental health professional mocked Plaintiff and refused to provide Plaintiff mental health medication.  *Id*.  Thereafter, Plaintiff attempted to commit suicide by overdosing on aspirin.  *Id*.

     As a result of the foregoing, Plaintiff filed suit against Defendant Wardens D.A. Braxton and Tracy S. Ray, asserting constitutional claims.  *Id*.  Among other things, Plaintiff claimed Defendants failed to provide appropriate mental health care and treatment, causing his mental health condition to deteriorate.  *Id*.  In response, Defendants sought dismissal of Plaintiff's claim for inadequate mental health care, noting that Plaintiff failed to exhaust his administrative

remedies with respect to said claim. *Id*. Ultimately, the District Court dismissed Plaintiff's claim for inadequate mental health care for failure to exhaust. *Id*. at *4-6. While he did file grievances, Plaintiff failed to fully exhaust his administrative remedies, thereby warranting dismissal. *Id*. In dismissing Plaintiff's claim for inadequate mental health care, the District Court neither recognized a mental incompetence exception to the PLRA nor provided Plaintiff an exemption for his failure to exhaust. *Id*.

Other federal courts have reached similar results. *See O'Guinn v. Lovelock Correctional Center*, 502 F.3d 1056 (9th Cir. 2007) (A prisoner suffering from mental illness, brain damage, and organic personality disorder and contending that Defendants denied him accommodation and treatment for his mental illness failed to exhaust his administrative remedies -- complaint dismissed); *see also Obreicht v. Raemisch*, 517 F.3d 489 (7th Cir. 2007) (A prisoner suffering from hallucinations and delusions and complaining that Defendants inappropriately forced administration of psychotropic medication failed to exhaust his administrative remedies -- complaint dismissed).

In this case, as in *White*, *O'Guinn*, and *Obreicht*, Horton's alleged mental incompetence does not excuse him from the stringent PLRA exhaustion requirements. Rather, Horton's undisputed failure to exhaust merits dismissal of Plaintiff's Eighth and First Amendment claims. *See* 42 U.S.C. § 1997e(a); *Freeman*, 196 F.3d at 645.

      **B.**    **Plaintiff's Eighth and First Amendment Claims (Causes of Action II, III, and IV) Should Be Dismissed Because Plaintiff Cannot Hold CCA Liable for the Alleged Constitutional Violations of Its Employees on a Respondeat Superior Theory.**

The Constitution is not directly applicable to individuals. 42 U.S.C. § 1983, however, creates a private cause of action for constitutional deprivations by any person acting under color

of state law. *See McBride v. Michiana*, No. 92-00155, 1994 WL 396143, at *3 (6th Cir. July 28, 1994).

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity . . ..

*See* 42 U.S.C. § 1983. To establish a Section 1983 claim, Plaintiff must prove that Horton was deprived of a right secured by the Constitution and that Horton was subjected to this deprivation by a person acting under color of state law. *See Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994).

Importantly, a person cannot be held liable under Section 1983 on a respondeat superior theory of liability. *See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Doe v. Claiborne County*, 103 F.3d 495, 511 (6th Cir. 1996). Section 1983 intends only to hold persons liable for the harm they themselves commit and decisively rejects the notion of respondeat superior liability. *See Monell*, 436 U.S. at 691.

Private corporations that operate prisons are "persons" for purposes of Section 1983. *See Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000). Importantly, in *Thomas v. Coble*, No. 02-5799, 2003 WL 343240, at *1 (6th Cir. Feb. 11, 2003), and in *Street v. CCA*, 102 F.3d 810, 818 (6th Cir. 1996), the Sixth Circuit recognized that CCA is a "person" for Section 1983 purposes.

Although CCA is a "person" for Section 1983 purposes, CCA is not "liable for every misdeed of [its] employees and agents." *See Garner v. Memphis Police Dept.*, 8 F.3d 358, 363 (6th Cir. 1993). Rather, Plaintiff can hold CCA liable for the alleged constitutional depravations of others only if those depravations occurred pursuant to an official policy or custom. *See*

*Searcy*, 38 F.3d at 286. Plaintiff, however, must demonstrate that the policy or custom was the "moving force" behind the constitutional depravations. *Id*. More specifically, Plaintiff must: (1) identify the policy or custom; (2) connect the policy or custom to CCA; and (3) demonstrate that Horton incurred an injury from execution of that policy or custom. *See Garner*, 8 F.3d at 364; *see also Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 404-05, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) ("That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee.").

Policy "generally implies a course of action consciously chosen from among various alternatives." *See Molton v. City of Cleveland*, 839 F.2d 240, 244 (6th Cir. 1988). The individual for whose conduct Plaintiff seeks to hold CCA liable must possess "final authority to establish . . . policy with respect to the action ordered." *See Liptak v. City of Niles*, No. 98-4078, 1999 WL 1045100, at *3 (6th Cir. Nov. 10, 1999). "Mere authority to exercise discretion while performing particular functions does not make [an] employee a final policymaker unless the [employee's] decisions are final and unreviewable and are not constrained by the official policies of superior officials." *See O'Brien v. City of Grand Rapids*, 23 F.3d 990, 1000-01 (6th Cir. 1994). No liability results where an employee merely has discretion to act. *Id*. at 1001.

In turn, a custom must "be so permanent and well settled as to constitute a custom or usage with the force of law." *See Doe*, 103 F.3d at 507-08. The notion of "law" must include

"[d]eeply embedded traditional ways of carrying out state policy." *Id*. A custom must reflect a course of action deliberately chosen from among various alternatives. *Id*.

Plaintiff cannot rely on random, unconnected, and scattershot accusations to establish a corporate policy or custom. *See Rizzo v. Goode*, 423 U.S. 362, 375, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995) ("'Isolated violations are not the persistent, often repeated, constant violations that constitute custom and policy' as required for . . . . Section 1983 liability."). Instead, Plaintiff must establish a common element between specific behaviors that leads to a constitutional violation. *See Rizzo*, 423 U.S. at 375. The focus is not merely on the number of allegations but "on the common thread moving through them." *Id*. It is this "common thread" that determines whether a policy or custom exists, not merely the number of complaints. *Id*. Similarly, the mere existence of previous complaints is insufficient to demonstrate a policy or custom of permitting or encouraging said treatment. *See Rogers v. City of Little Rock*, 152 F.3d 790, 799 (8th Cir. 1998). Instead, there must be some showing that the complaints have merit. *Id*. In short, one bare allegation is insufficient to establish a policy or custom. *See Carter v. Morris*, 164 F.3d 215, 218-20 (4th Cir. 1999); *Carter v. District of Columbia*, 795 F.2d 116, 123-24 (D.C. Cir. 1986).

*Lazarus v. Eisen*, No. 1:07-CV-524, 2007 WL 2780381, at *1 (W.D. Mich. Sept. 18, 2007), is instructive in this context. In *Lazarus*, Plaintiff was confined at the Standish Maximum Correctional Facility ("SMCF"). *Id*. Prior to incarceration, Plaintiff suffered from various mental health diseases. *Id*. Upon incarceration, Plaintiff was housed in administrative segregation. *Id*. While in administrative segregation, Plaintiff's mental health condition allegedly deteriorated, causing him to exhibit increasingly abnormal behavior. *Id*. Specifically, Plaintiff suffered from deep depression, experienced frequent and morbid hallucinations,

overdosed on his medication on three occasions, and attempted to hang himself. *Id*. In response, SMCF personnel transferred Plaintiff to the Ionia Maximum Correctional Facility ("IMCF"). *Id*. at *2. Upon incarceration, Plaintiff was again placed in administrative segregation. *Id*. While in administrative segregation, Plaintiff's mental health condition continued to deteriorate. *Id*. Specifically, Plaintiff overdosed on medication, set his cell on fire, "tore up" his cell during a "black-out paranormal experience," experienced a "powerful visual and audio hallucination," and ingested pieces of metal and concrete in an attempt to injure himself. *Id*. In response, IMCF personnel placed Plaintiff in an observation cell. *Id*. While in the observation cell, Plaintiff continued to exhibit abnormal behavior -- ingesting glass, cutting his arms with glass, overdosing on medication, and destroying two cameras and the window of his cell. *Id*. In response, for fourteen days, IMCF personnel restrained Plaintiff, leaving him naked on his bed with no facilities in which to urinate or defecate. *Id*. Over the course of his incarceration, Plaintiff requested mental health care and treatment. *Id*. at *1-2. Notwithstanding the foregoing, SMCF and IMCF personnel refused Plaintiff's request. *Id*.

As a result, Plaintiff filed suit against several Defendants, including Patricia Caruso, Director of the Michigan Department of Corrections, and SMCF Warden Thomas Birkett. *Id*. at *1. In response, Caruso and Birkett sought dismissal, noting that Plaintiff could not hold them liable for the alleged constitutional violations of others on a respondeat superior theory, absent evidence that they engaged in unconstitutional. *Id*. at *4. Ultimately, the District Court dismissed Plaintiff's lawsuit against Caruso and Birkett. *Id*. According to the Court:

> A plaintiff bringing an action pursuant to [Section] 1983 cannot premise liability upon a theory of respondeat superior or vicarious liability. Moreover, it is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal . . .. Accordingly,

>  Defendants Caruso and Birkett will be dismissed for failure to state a claim.

*Id*. (citations omitted).

Other federal courts have reached similar results. *See Cummings v. Middletown, Ohio City Jail*, No.1:08-CV-248, 2008 WL 1849172, at *1 (S.D. Ohio Apr. 23, 2008); *Peterson v. Coplan*, No. 05-CV-55-PB, 2008 WL 80081, at *1 (D.N.H. Jan. 7, 2008); *Williams v. Bays*, No. 7:07-CV-00019, 2007 WL 1553588, at *1 (W.D. Va. Mar. 20, 2007); *Baylis v. Taylor*, 475 F. Supp. 2d 484 (D. Del. 2007); *Thornton v. Montgomery*, 78 F. Supp. 2d 1218 (M.D. Ala. 1999).

In this case, as in *Lazarus*, Plaintiff fails to adequately allege that CCA has an official policy or a pervasive, widespread custom of providing inadequate mental health care and treatment. (*See* Complaint). Vitally, Plaintiff cannot justly allege, much less prove, that CCA maintains an official policy of providing inadequate mental health care and treatment. Obviously, CCA does not have such a policy. This critical fact aside, it is illogical to conclude -- or even suggest -- without any factual support whatsoever that a company specializing in housing prisoners designed its policies to promote inadequate mental health care and treatment, thereby running afoul of the Constitution.

Likewise, Plaintiff fails to -- and cannot -- adequately allege that CCA upholds a pervasive, widespread custom of providing inadequate mental health care and treatment. (*Id*.). In her futile attempt to do so, Plaintiff misses the mark -- failing to even suggest that CCA's claimed custom was the "moving force" behind the alleged constitutional violation that is the subject of the Complaint in this matter. Specifically, Plaintiff does not connect the claimed custom to CCA or demonstrate that Horton incurred injuries from execution of that custom. (*Id*.). Likewise, Plaintiff offers no substantive evidence of any similar incidents of CCA employees providing inadequate mental health care and treatment and correspondingly fails to

prove the other incidents were meritorious or connected with a common thread to the incident involving Horton. (*Id.*). In light of these failures, Plaintiff simply cannot hold CCA liable for the alleged constitutional violations of CCA employees. *Abston v. Shelby County Justice Ctr.*, No. 00-6248, 2001 WL 1141376, at *1 (6th Cir. Sept. 17, 2001).

As set forth, Plaintiff cannot hold CCA liable for the alleged constitutional violations of its employees on a respondeat superior theory of liability because CCA does not have an official policy or a pervasive, widespread custom of providing inadequate mental health care and treatment. Dismissal of Plaintiff's Eighth and First Amendment claims against CCA is, therefore, warranted. *See Monell*, 436 U.S. at 691; *Searcy*, 38 F.3d at 286; *Garner*, 8 F.3d at 364.

**C. Plaintiff's Eighth Amendment Claim (Causes of Action II and III) Should Be Dismissed Because Plaintiff Cannot Hold CCA Liable for Any Alleged Constitutional Violations in the Absence of Physical Injury.**

The PLRA applies to Eighth Amendment claims for emotional or mental damages -- the sole damages Plaintiff contends Horton sustained in the pending lawsuit. *See Jarriet v. Wilson*, No. 03-4196, 2005 WL 3839415, at *4 (6th Cir. July 7, 2005). The PLRA, however, requires a prior showing of physical injury before a prisoner may bring a claim for emotional or mental damages. *See* 42 U.S.C. § 1997e(e); *Robinson v. CCA*, No. 99-5741, 2001 WL 857204, at *1 (6th Cir. June 20, 2001). It provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." *See* 42 U.S.C. § 1997e(e). The requisite physical injury need not be significant; however, it must be more than *de minimis*. *Adams v. Rockafellow*, No. 02-2118, 2003 WL 21259701, at *1 (6th Cir. May 28, 2003).

In her Complaint, Plaintiff contends that CCA failed to diagnose and/or provide Horton appropriate mental health care and treatment during his incarceration at the Detention Facility. (*See* Complaint). As a result of this alleged failure, Plaintiff contends Horton suffered deterioration in his mental health status. (*Id*. ¶¶ 45, 51, 72). In fact, in her Complaint, Plaintiff describes the mental and emotional injuries CCA allegedly inflicted on Horton throughout his incarceration. (*See* Complaint). Plaintiff, however, fails to allege that Horton sustained any physical injury whatsoever. (*Id*.). To the contrary, in the 105 paragraphs of her Complaint, Plaintiff asserts only emotional and mental injury. (*Id*.). Because Horton suffered no physical injury, he cannot recover for his claimed emotional or mental damages. *See* 42 U.S.C. § 1997e(e); *Grissom*, 2003 WL 343248, at *2; *Robinson*, 2001 WL 857204, at *1. Dismissal of Plaintiff's constitutional claims against CCA is, therefore, warranted. *See Edmond v. Texas Dept. of Corrections*, 161 F.3d 8 (5th Cir. 1998) (Prisoner's allegation that he received inadequate mental health care, causing him to suffer seizures and a nervous attack, did not constitute a physical injury.); *Wimble v. Cotton*, No. 1:05-CV-156, 2007 WL 756597, at *1 (D. Vt. Mar. 8, 2007) (Prisoner's claim that he received inadequate psychiatric care failed to establish a physical injury.); *Sneed v. Hunt County Medical Dept.*, No. 3-05-CV-2032-H, 2006 WL 536604, at *1 (N.D. Tex. Jan. 31, 2006) (Prisoner's contention that he did not receive appropriate medication for his anxiety and insomnia over the course of his incarceration did not constitute a physical injury.); *Edmond v. Waller*, No. 5:04-CV-107-JCS, 2006 WL 2975465, at *3 (S.D. Miss. Oct. 17, 2006) (Prisoner's claim that he received inadequate psychiatric care did not assert a physical injury.); *Weatherspoon v. Valdez*, No. 3-05-CV-0586-P, 2005 WL 1201118, at *1 (N.D. Tex. May 17, 2005 (Prisoner's claim that he did not receive appropriate medication for his bipolar disorder and other mental illnesses did not establish a physical injury.); *Waters v.*

*Andrews*, No. 97-CV-407, 2000 WL 1611126, at *1 (W.D.N.Y. Oct. 16, 2000) (Prisoner's contention that she did not receive appropriate mental health care and treatment during her incarceration did not constitute a physical injury.).

> D. **Plaintiff's Intentional Infliction of Emotional Distress Claim (Cause of Action I) Should Be Dismissed Because Dismissal of Plaintiff's Federal Law Claims Mandates Dismissal of Plaintiff's Supplemental State Law Claim.**

Although Plaintiff does not allege as such, this Court has supplemental jurisdiction over her Tennessee state law claim for intentional infliction of emotional distress pursuant to 28 U.S.C. § 1367(a). *See* 28 U.S.C. § 1367(a); *Fuller v. TVA*, No. 1:04-CV-113, 2007 WL 2077639, at *3 (E.D. Tenn. July 13, 2007). Specifically, in cases in which federal district courts have original jurisdiction, they also have supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . .." *See* 28 U.S.C. § 1367(a); *Eicher v. Toungette*, No. 3:05-1045, 2007 WL 1240886, at *15 (M.D. Tenn. Apr. 26, 2007). A district court, however, should decline to exercise supplemental jurisdiction over state law claims if the district court has dismissed all federal law claims over which it had original jurisdiction. *See* 28 U.S.C. § 1367(c)(3); *Stuart v. Metropolitan Government of Nashville and Davidson County*, No. 3:06-1000, 2007 WL 2479502, at * 5-6 (M.D. Tenn. Aug. 10, 2007). While 28 U.S.C. § 1367(c)(3) does not render dismissal mandatory, Sixth Circuit courts have tended to dismiss supplemental state law claims when federal law claims are found inappropriate. *Barbee v. Wal-Mart Stores, Inc.*, No. 01-2228, 2002 WL 1784318, at *4 (W.D. Tenn. July 16, 2002). As aptly stated by the Supreme Court: "[I]n the usual case in which all federal law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine -- judicial economy, convenience, fairness, and comity -- will point toward declining to exercise jurisdiction over the

remaining state law claims." *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988).

In this case, dismissal of Plaintiff's federal law claims is warranted, leaving only Plaintiff's state law claim for intentional infliction of emotional distress. Because only Plaintiff's state law claim remains, the Court should decline to exercise supplemental jurisdiction over that claim and dismiss Plaintiff's Complaint in its entirety.

### III. CONCLUSION

For the foregoing reasons, CCA respectfully moves the Court to dismiss Plaintiff's Complaint in its entirety.

Respectfully submitted,

/s/ Joseph F. Welborn, III
Joseph F. Welborn, III (#15076)
Erin Palmer Polly (#22221)
Jason W. Callen (#26225)
Walker, Tipps & Malone
2300 One Nashville Place
150 Fourth Avenue North
Nashville, Tennessee 37219
(615) 313-6000

*Counsel for Defendant Corrections Corporation of America*

## **CERTIFICATE OF SERVICE**

       I certify that a true and exact copy of the foregoing has been served upon Filing Users via the electronic filing system and on other counsel via U. S. Mail, first-class postage prepaid, this August 12, 2008, on the following:

W. Gary Blackburn
John Ray Clemmons
101 Lea Avenue
Nashville, Tennessee 37210

Raymond T. Throckmorton, III
Realtors Building
306 Gay Street, Suite 200
Nashville, Tennessee 37201

                                                        /s/ Joseph F. Welborn, III

65124