# IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **MARY BRASWELL, as Conservator of** | ) | |
| **FRANK D. HORTON, Individually,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 3:08-0691** |
| **v.** | ) | **Judge Nixon** |
| | ) | **Magistrate Judge Knowles** |
| **CORRECTIONS CORPORATION OF** | ) | |
| **AMERICA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

Pending before the Court is Defendant Corrections Corporation of America's ("CCA")

Motion to Dismiss ("Defendant's Motion") (Doc. No. 5) and Defendant's Memorandum in

Support (Doc. No. 6). This Court converted Defendant's Motion to a Motion for Summary

Judgment (Doc. No. 10). Plaintiff Mary Braswell ("Plaintiff") filed a Response in Opposition to

Defendant's Motion (Doc. No. 22), Plaintiff's Statement of Undisputed Facts (Doc. No. 23), and

a Memorandum in Support (Doc. No. 24). Defendant filed a Reply (Doc. No. 31) and Response

to Plaintiff's Statement of Undisputed Facts (Doc. No. 35). For the reasons stated below,

Defendant's Motion is **GRANTED**.

## I. BACKGROUND

### A. Procedural Background

On July 16, 2008, Plaintiff, as conservator of and on behalf of Frank D. Horton

("Horton"), filed this action against CCA. (Doc. No. 1). Plaintiff asserted violations of Horton's

First Amendment rights (Cause of Action IV), Eighth Amendment rights (Causes of Action II

and III), and intentional infliction of emotional distress (Cause of Action I). (Id.). On August 12,

2008, CCA filed a Motion to Dismiss, requesting dismissal of: Plaintiff's First and Eighth

Amendment claims, for failure to exhaust administrative remedies; Plaintiff's Eighth

Amendment claims, for the absence of a showing of physical injury; Plaintiff's First and Eighth

Amendment claims, for the inability to hold CCA liable on a respondeat superior theory; and

Plaintiff's Intentional Infliction of Emotional Distress claim, for lack of jurisdiction. (Doc. No.

5). CCA attached to its Motion to Dismiss an affidavit of Tracie Mathews, the Quality

Assurance Manager at the Detention Facility, as well as a copy of CCA's grievance policy. (Doc.

No. 7; Doc. No. 7, Ex. A). Because CCA's Motion to Dismiss included matters outside of the

pleadings, pursuant to Federal Rule of Civil Procedure 12(d), CCA's Motion to Dismiss was

treated as a motion for summary judgment. (Doc. No. 10).


### B. Factual Background

Horton currently resides as an inmate in the Lois DeBerry Special Needs Facility

("DeBerry facility") where he is confined as a nonviolent offender.[1] The instant case stems

entirely from the time period before Horton's transfer to the DeBerry facility, during his

incarceration at the Metro Davison County Detention Facility ("Detention Facility"). Prior to

Horton's incarceration at the Detention Facility, he was diagnosed with Bipolar Disorder and

---

[1] Facts in this section are taken from Plaintiff's Statement of Undisputed Material Facts (Doc. No. 23), Defendant's Response to Plaintiff's Statement of Undisputed Material Facts (Doc. No. 35), and the Complaint (Doc. No. 1), unless otherwise noted.

Attention Deficit Hyperactivity Disorder (ADHD). Horton was physically functional, spoke and communicated in a clear and comprehensible manner, and exhibited functional behavior within the community before his incarceration at the Detention Facility.

Horton was confined at the Detention Facility from December 9, 2005 until April 11, 2008. Defendant CCA holds exclusive use and control of the Detention Facility through a contract with the Metropolitan Government of Nashville and Davison County, Tennessee. At the Detention Facility, Horton was considered a special needs inmate and was housed primarily in the Segregation Unit.

On January 1, 2006, Horton fought with a cellmate. The altercation resulted in guards using force to separate the two inmates. A CCA incident report states that, as a result of the incident, Horton suffered some injuries on his face and neck. Horton refused to give a written statement about the incident; however, his cellmate wrote that Horton was "hearing voices." On February 3, 2006, Horton fought another inmate in a shower cage. Facility guards used force to separate them. A CCA incident report states that, as a result of this incident, Horton suffered injuries on his shoulder, bicep, back, and chin.

On July 26, 2006, Horton was transported to booking to receive additional time on his sentence for assaulting a guard. A CCA incident report states that a lieutenant at booking asked CCA personnel to leave Horton alone with him after Horton refused to be booked. The report states that Horton "came out with multiple abrasions on his face" after being alone with the lieutenant. Upon return to the Detention Facility, Horton was taken to the medical unit, pictures were taken, then he was escorted back to segregation. CCA emergency medical personnel saw Horton as a result of CCA's use of force against him on several occasions, including: February

-3-

11 and 15, 2006; May 12, 2006; June 3, 13, and 28, 2006; July 5, 10, and 26, 2006; September 17, 2006; and January 3, 2007.

In April, 2006, Horton began remaining in his cell for multiple days at a time. On January 9, 2007, a CCA special needs board decided to evaluate Horton twice a month. The board never evaluated Horton, however, because he refused to exit his cell. Patrick Perry ("Perry"), an officer at the Detention Facility from August, 2006 to January 31, 2008, testified that Horton did not leave his cell to take a shower or get a haircut for a period of nine consecutive months. These nine months spanned May 2007 until January 2008. In November 2007, Horton was able to hold an intelligible conversation with others and was able to clearly and explicitly express his needs to the CCA staff. In late January 2008, however, Perry testified that when he visited Horton's cell, Horton was unable to communicate with others and was speaking "gibberish." Perry testified that Horton's cell was filthy, with several food plates on the floor and bacteria growing inside the toilet.

Following this late January 2008 visit with Horton, Perry approached Tracie Mathews ("Mathews"), the Quality Assurance Manager at CCA, to inform her of the condition of Horton's cell and the fact that he had not left that cell in nine months. Perry testified that he believed it was against CCA policy to allow an inmate to remain un-showered and in his cell for such a length of time. According to Perry, Mathews told Perry that she would look into Horton's situation, but when Perry returned to the Segregation Unit sometime later, Horton was not out of his cell. Approximately four or five days after he spoke with Mathews, Perry testified that he went to the Metro Health Department, spoke with Kathy Seigenthaler there, and provided her with documents related to Horton. According to Brian Gardner, who served as Warden of the

-4-

Detention Facility from 2002 to 2008, Ms. Seigenthaler visited Horton at the Detention Facility sometime later.

On April 11, 2008, by court order, Horton was transferred out of CCA custody at the Detention Facility. Horton was placed in the Charles Bass Correctional Complex. On April 24, 2008, Horton was subsequently transferred to the DeBerry facility. Upon Horton's arrival at the DeBerry facility, Dr. Renee Glenn diagnosed Horton's mental condition as Schizophrenia (undifferentiated type) and Poly-Substance Dependence (by history). Dr. Glen also testified that "the improvement to Mr. Horton's ability to communicate and his overall mental health since his admission to the DeBerry facility evidences that Mr. Horton was not receiving the same degree of mental health treatment, if any, prior to his admission to the Charles Bass Correctional Complex and the DeBerry facility." Plaintiff's attorney, John Ray Clemmons, stated that when he visited Horton on July 24, 2008, Horton introduced himself to Mr. Clemmons in understandable English, asked detailed questions regarding this action, and inquired about his release date.

At some point during Horton's incarceration at the Detention Facility, Plaintiff mailed correspondence to Horton with a money order enclosed. The letter was returned to Plaintiff with no explanation regarding why it was not delivered to Horton and without the enclosed money order. Plaintiff resent the letter to Horton, but it was returned again by CCA with no explanation regarding the location of the money order or the reason for the correspondence's return.

The CCA grievance procedure in effect at the Detention Facility during Horton's incarceration requires inmates to utilize an informal resolution process for questions, disputes or complaints prior to the submission of a formal grievance form. (Doc. No. 7, Ex. A, at 2). Matters grievable through this procedure, among others, include matters relating to the

-5-

conditions of care and supervision within the authority of CCA. (Id.) Non-grievable matters, among others, include contracting agency policies, procedures, decisions or matters, such as institutional transfers. (Id., at 3). An inmate must file the grievance within seven days of the alleged incident. (Id.). The time for filing begins from the date the problem or incident became known to the inmate. (Id.). Throughout his incarceration at the Detention Facility, Horton did not file any grievances.

Plaintiff Mary Braswell is the maternal grandmother of Horton. After Horton's transfer to the DeBerry facility, the Seventh Circuit (Probate) Court of Davison County issued Plaintiff Temporary Letters of Conservatorship of Horton on June 12, 2008 and a Letter of Conservatorship of Horton on July 23, 2008.


## II. LEGAL ANALYSIS

Summary judgment is appropriate when there is "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). All facts, and reasonable inferences to be drawn from those facts, must be viewed in the light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Only disputes over facts that might affect the outcome of the suit will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Not every issue of fact or conflicting inference presents a genuine issue of material fact which requires a denial of summary judgment. Street v. J.C. Bradford & Co., 886 F.2d 1472, 1477 (6th Cir. 1989).

The movant for summary judgment bears the initial burden of informing the court of the

-6-

basis of its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. See Celotex v. Catrett, 477 U.S. 317, 323 (1986). A movant makes a sufficient showing by demonstrating to the court that there is an absence of evidence to support the non-moving party's case. LaFountain v. Martin, No. 08-1796, 2009 WL 1546376, at *1 (6th Cir. June 3, 2009) (citing Celotex, 477 U.S. at 324).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. See Celotex, 477 U.S. at 323. The non-movant may not rely solely on the pleadings to defeat a motion for summary judgment, but must set forth specific facts showing that there is a genuine issue for trial. Anderson, 477 U.S. at 248. Furthermore, a "mere scintilla" of evidence will not be enough for the non-moving party to withstand summary judgment. Ciminillo v. Streicher, 434 F.3d 461, 464 (6th Cir. 2006) (citing Skousen v. Brighton High Sch., 305 F.3d 520, 526 (6th Cir. 2002)). However, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," summary judgment will be denied. Anderson, 477 U.S. at 248.

## III. ANALYSIS

### A. Exhaustion of Administrative Remedies

As a threshold matter, the Prison Litigation Reform Act ("PRLA") applies to Plaintiff's constitutional claims (Causes of Action II, III, and IV). The PLRA requires prisoners to exhaust all administrative remedies before filing suit in federal court: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a

-7-

prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); See Freedman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999).

Plaintiff contends that the PLRA does not apply to her constitutional claims because she filed this action, rather than Horton, and she is not a "prisoner" as defined by the PLRA. (Doc. No. 24, at 4). A "prisoner" is defined by the PLRA as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). It is undisputed that Horton is a prisoner within the meaning of the PLRA. (Doc. No. 23, at 1; Doc. No. 35, at 1-2). Plaintiff contends her status as plaintiff in this matter, rather than Horton's status, is relevant for triggering the application of the PLRA. (Doc. No. 24, at 4). The Court disagrees.

Exhaustion of administrative remedies is a prerequisite for all actions brought with respect to prison conditions. Taylor v. United States, 161 F. App'x 483, 487 (6th Cir. 2005) (citing Porter v. Nussle, 534 U.S. 516, 524 (2002)). The Sixth Circuit, as well as several other circuits and district courts, have consistently applied the PLRA exhaustion requirement to cases involving guardians of juveniles and mentally incompetent prisoners. See, e.g., Brock v. Kenton County, 93 F. App'x 793, 796-97 (6th Cir. 2004) (applying the exhaustion requirement to a juvenile-prisoner suit); Lindsley v. Worley, No. 1:07-CV-588, at *2 (S.D. Ohio May 4, 2009) (applying the PLRA exhaustion requirement to a suit involving a mentally ill prisoner who was represented by a guardian ad litem or next friend); Villescaz v. City of Eloy, No. CV-06-2686-PHX-FJM, 2008 WL 1971394, at *4 (D. Ariz. May 2, 2008) (dismissing a suit filed by the

-8-

guardian of a mentally incompetent adult for failure to exhaust administrative remedies); Tribble v. Bradley County Sheriff's Dep't, No. 1:05-CV-321, 2006 WL 962821, at *2 (E.D. Tenn. Apr. 12, 2006) (noting that the PLRA exhaustion requirement would still apply to a guardian ad litem filing); Collins v. Seeman, No. 02 C 4493, 2003 WL 23144867, at *2 (N.D. Ill. Dec. 29, 2003) (dismissing a suit brought by a parent-plaintiff on behalf of a juvenile-prisoner's estate for failure to exhaust administrative remedies); Moore v. Louisiana Dep't of Pub. Safety & Corr., No. CIV.A. 99-1108, 2002 WL 1791996, at *4 (E.D. La. Aug. 5, 2002) (applying the PLRA exhaustion requirement to a guardian ad litem suit).

Plaintiff cites Arsberry v. Illinois, 244 F.3d 558, 561-62 (7th Cir. 2001), Carter v. Jones, No. CIV-06-176-L, 2006 WL 2320807, at *6-7 (W.D. Okla. Aug. 9, 2006), and Rivera-Rodriguez v. Pereira-Castillo, No. 04-1389(HL), 2005 WL 290160, at *14 (D.P.R. Jan. 31, 2005), in support of her contention that a conservator-guardian is not subject to the exhaustion requirement of the PLRA. In two of these cases, though, the plaintiffs filed independent claims, alleging harm to themselves. See Arsberry, 244 F.3d at 561-62; Carter, 2006 WL 2320807, at *7. Plaintiff is correct in noting that the District Court of Puerto Rico found that "the language of the [PLRA] does not encompass the family members or legal guardians of a prisoner." Rivera-Rodriguez, 2005 WL 290160, at *5. However, the District Court in that case also excused the exhaustion requirement because the plaintiff's deceased family member was not "confined" at the time of the filing of the complaint. Id. Also, in the same year, that District Court addressed a similar situation involving a deceased prisoner's family members who sued on his behalf. Rivera-Quinones v. Rivera-Gonzales, 397 F. Supp. 2d 334, 340 (D.P.R. 2005). There the court did not cite the family member's status as a non-prisoner as the grounds for excusing

-9-

the exhaustion requirement; rather the court noted, as it did in <u>Rivera-Rodriguez</u>, that the deceased prisoner was not "confined" at the time of filing. <u>Rivera-Quinones</u>, 397 F. Supp. 2d at 340.

In the instant case, Plaintiff has not filed an independent claim alleging an individual harm. Rather, Plaintiff sues on behalf of Horton. (Doc. No. 1, at 1). At the time this complaint was filed, Horton was, and in fact still is, a prisoner "confined in a jail, prison, or correctional facility," as defined by the PLRA. <u>See</u>, 42 U.S.C. § 1997e(a)(h); Doc. No. 23, at 1; Doc. No. 35, at 1-2. Therefore, Plaintiff is subject to the requirements of the PLRA, including the requirement to exhaust all available administrative remedies before filing in federal court.

A prisoner's failure to exhaust under § 1997e(a) is an affirmative defense on which the defendant bears the burden of proof. <u>Vandiver v. Corr. Med. Serv.s, Inc.</u>, No. 08-1281, 2009 WL 1175153, at *2 (6th Cir. May 1, 2009) (citing <u>Jones v. Bock</u>, 549 U.S. 199, 217 (2007)). CCA argues that Horton has not exhausted his administrative remedies because he never completed any grievance forms. (Doc. No. 5, at 4). In support, CCA filed an affidavit of Tracie Mathews, Quality Assurance Manager at the Detention Facility, in which Ms. Mathews testified that Horton did not file any grievances at the Detention Facility throughout his incarceration. (Doc. No. 7, at 1). In response, Plaintiff contends that defendant's burden of proof has not been met because: (1) the remedies sought by Plaintiff were not available to Horton; (2) those available remedies were exhausted; and, regardless, (3) CCA has waived this affirmative defense.

*1. The availability of administrative remedies*

Plaintiff alleges that administrative remedies were not available to Horton for the following reasons: (1) the grievance procedure at CCA was too complicated; (2) the remedies

-10-

Horton sought were non-grievable through the grievance procedure; and (3) Horton's mental capacity and subsequent transfer to the DeBerry facility effectively barred access to the procedures. (Doc. No. 24, at 7-12). For the reasons below, the Court finds the grievance procedures at CCA unavailable to Horton between November 2007 and July 24, 2008, but available before that time period.

CCA's grievance policy requires inmates to submit an inmate request form to utilize the informal resolution process before filing a formal grievance. (Doc. No. 7, Ex. A, at 2). The purpose of this initial step is to allow the institutional staff and the inmate to directly and promptly resolve the issue without the filing of a formal complaint. (Id.). If the inmate is not satisfied with the informal grievance process, he may file a formal grievance, documenting that he attempted the informal grievance process. (Id.). Plaintiff contends that the institutional staff member involved in the informal grievance process decides independently whether the inmate is permitted to file a formal grievance. (Doc. No. 24, at 8). Plaintiff does not cite any authority for this assertion. On the contrary, CCA's grievance policy states that "all inmate/residents will have access to formal grievance procedures any time the informal process has not provided successful resolution of the complaint." (Doc. No. 7, Ex. A, at 2).

Plaintiff contends that requiring the informal resolution process before allowing access the formal grievance process made the administrative remedies at CCA "unavailable." (Doc. No. 24, at 7). Supreme Court rulings suggest the opposite, however. See Jones v. Bock, 549 U.S. 199, 218 (2007); Woodford v. Ngo, 548 U.S. 81, 90-91 (2006). In Woodford, the Supreme Court noted that proper exhaustion requires "compliance with the agency deadlines and other critical procedural rules." 548 U.S. at 90. The Court reiterated this notion in Jones, stating that it is the

-11-

prison's requirements and not the PLRA that defines proper exhaustion.  See 549 U.S. at 218.

In support of her contention, Plaintiff relies on Collins v. Goord, 438 F. Supp. 2d 399, 415 (S.D.N.Y. 2006), Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003), Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002), and Pendergrass v. Sanney, No. 01 CV 243A, 2004 WL 1946458, at *2 (W.D.N.Y. Aug. 18, 2004), respectively.  Those cases held that administrative remedies may be rendered unavailable when facilities respond improperly to prisoners' grievances.  See Mitchell, 318 F.3d at 529 (refusal to provide grievance forms when requested rendered administrative remedies unavailable); Collins, 438 F. Supp. 2d at 415 (administrative remedies are unavailable when the detention facility, contrary to policy, rejected prisoner's grievance at an initial screening stage); Pendergrass, 2004 WL 1946458, at *2 (refusal to provide inmate with requested grievance forms renders remedies unavailable); Lewis, 300 F.3d at 833 (indefinite delay in responding to grievances would render remedies unavailable).

None of those cases shed any light on the instant case, in which Horton did not file, or attempt to file, any grievances.  The Sixth Circuit requires some affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable.  See Brock v. Kenton County, 93 F. App'x 793, 798 (6th Cir. 2004).  The procedures become "unavailable" when prison officials have somehow thwarted these affirmative efforts at exhaustion.  See id.  Because Plaintiff has not alleged that Horton made any attempt to file a grievance or otherwise exhaust his remedies, Plaintiff cannot demonstrate that CCA thwarted these efforts and thereby rendered the remedies unavailable.

Plaintiff next contends that Horton was not required to exhaust administrative remedies because the CCA grievance procedure would not afford the remedies he sought—proper

-12-

psychiatric care for his deteriorating mental condition and a transfer to a mental health facility. (Doc. No. 24, at 12-13). Contrary to Plaintiff's assertion, however, CCA's grievance policy explicitly states that "matter[s] relating to the conditions of care" are grievable matters, (Doc. No. 7, Ex. A, at 2), and Horton could have filed a grievance if he believed that he was receiving improper mental health care. Plaintiff is correct, though, in stating that an institutional transfer is listed as a non-grievable matter in the CCA grievance policy. (Doc. No. 7, Ex. A, at 3). The Supreme Court, however, has held that administrative remedies must be exhausted, regardless of the inability to receive the particular remedy sought. See Booth v. Churner, 532 U.S. 731, 741 (2001); see also Dellis v. Corr. Corp. of America, 257 F.3d 508, 511 (6th Cir. 2001). As long as the grievance procedure offered "the possibility of some relief for the action complained of," those remedies were considered to be available. See Booth, 532 U.S. at 738-39. A transfer was not in and of itself what Plaintiff sought. Rather, Plaintiff desired a transfer in order for Horton to "receiv[e] proper medical treatment, [live] in a sanitary cell, [receive] mail and visitation, and ... properly [be] protected from other inmates who may cause physical injury to him." (Doc. No. 24, at 14). Although a transfer may not have been available through CCA's grievance procedures, Horton could have filed a grievance regarding the conditions of his care and thus could have received some relief for the action complained of.

Plaintiff further contends that Horton's mental incapacity and subsequent transfer made the grievance system at CCA unavailable to him. (Doc. No. 24, at 8). The Sixth Circuit does not have well-developed case law on whether a physical or mental injury can render administrative remedies unavailable. The Sixth Circuit has held administrative remedies are not unavailable when an inmate waits until the grievance period has passed to file a grievance and the detention

-13-

facility rejects his untimely grievance. Thomas v. Woolum, 337 F.3d 720, 734 (6th Cir. 2003), *overruled on other grounds by* Woodford v. Ngo, 548 U.S. 81, 87 (2008). In Thomas, however, the Sixth Circuit recognized a narrow exception utilized by the Fifth Circuit when an inmate was unable to file a grievance due to a physical injury. See Thomas, 337 F.3d at 734 (citing Days v. Johnson, 322 F.3d 864, 867-68 (5th Cir. 2003)).

The Fifth Circuit recognized a narrow situation in which administrative remedies become unavailable to a prisoner due to a physical injury. See Days, 322 F.3d at 868.[2] The court held that administrative remedies are deemed unavailable when: (1) an inmate's untimely filing of a grievance is due to a physical injury; and (2) the grievance system rejects the inmate's subsequent attempt to exhaust his remedies based on the untimely filing of the grievance. Id. Courts applying the Days test have required that once the inmate is no longer inhibited by his injury, he must file a grievance and be denied before the remedies will be deemed unavailable. See, e.g., Chavez v. Thorton, No. 05-CV-00607, 2008 WL 2020319, at *5 (D. Colo. May 9, 2008) (citing Days, 322 F.3d at 867-68); Baker v. Schriro, No. CV 07-0353-PHX-SMM (JRI), 2008 WL 622020, at *5 (D. Ariz. Mar. 4, 2008); Macahilas v. Taylor, No. CIV S-06-0502, 2008 WL 220364, at *3 (E.D. Cal. Jan. 25 2008) (citing Days, 322 F.3d at 867-68); Mingliton v. Wright, No. 7:06-CV-026-R, 2007 WL 1732388, at *2 (N.D. Tex. June 14, 2007) (same); Benfield v. Rushton, No. 8:06-2609-JFA-BH, 2007 WL 30287, at *4 (D.S.C. Jan. 4, 2007) (same). The Seventh Circuit has also suggested that a prisoner's physical injury may render administrative remedies unavailable. See Pavey v. Conley, 544 F.3d 739, 740 (7th Cir. 2008)

---

[2] A subsequent Fifth Circuit case, Johnson v. Ford, 261 F. App'x 752, 755-56 (5th Cir. 2008), recognized an overruling of Days in light of the holding of Woodford, 548 U.S. at 89. However, that case recognized that overruling on other grounds.

-14-

(excusing a left-handed prisoner with a broken left arm from having to exhaust his remedies because he was unable to fill out a grievance form).

Although the Days test contemplates a physical injury, the logic is equally applicable to a disabling mental illness. See e.g., Baker, 2008 WL 622020, at *5 (applying the Days analysis to mental illness). At least one district court has also extended the Seventh Circuit reasoning in Pavey to include both physical and mental infirmities. See Johnson-Ester v. Elyea, No. 07-CV-4190, 2009 WL 632250, at *6 (N.D. Ill. Mar. 9, 2009) (finding "no reason" not to include both physical and mental infirmities in the analysis of availability of remedies). This Court finds the Fifth and Seventh Circuits' reasoning persuasive and adopts the two-prong Days test to determine the availability of administrative remedies when the inmate alleges incapacitating physical injury or mental illness.

The Court emphasizes that this holding is limited to the facts of this case where an inmate's mental incapacity rendered him unable to communicate in any intelligible form for a particular period. The relevant issue is not whether the individual can be classified as "mentally ill," but rather, whether the individual's impairment renders him unable to comply with the grievance procedure. If an inmate's physical or mental incapacity rendered him completely unable to file a grievance, and this is evidenced to the Court's satisfaction, the inmate will not be required to do so during that period. Once the inmate recovers sufficiently to file a grievance, however, the inmate must attempt to comply with the facility's grievance procedure and the grievance must be denied before those administrative remedies are rendered unavailable for purposes of the PLRA.

It is undisputed that Horton was able to speak and communicate his needs in November

-15-

2007.  Officer Perry first observed Horton's inability to communicate in late January 2008.

There is no indication in the record when exactly between November 2007 and January 2008

Horton became unable to communicate.  Horton was transferred from the CCA Detention

Facility on April 11, 2008 and upon admission to the DeBerry facility he was still unable to

communicate.  The first indication in the record that Horton was able to communicate again is

July 24, 2008 during a visit with his lawyer.  (Doc. No. 20, at 3).  Taking the facts in the light

most favorable to Plaintiff, the Court will assume that Horton was continuously unable to

communicate from November 2007 until July 24, 2008.  The Court finds Horton's inability to

communicate in any form other than "gibberish" during this period sufficient to establish that

Horton was unable to comply with the grievance procedures during that period.  However, once

he was able to communicate in July 2008, Horton would be required to attempt to file a

grievance.

It is undisputed in the record that Horton did not even attempt to file a grievance after he

regained an ability to communicate.  Plaintiff contends that this failure should be excused

because CCA's grievance procedure is unavailable except to those inmates confined in a CCA

facility, of which the DeBerry facility is not one.  (Doc. No. 24, at 9).   CCA's grievance policy

utilizes the language "[a]ny inmate/resident confined to a CCA managed facility" to describe the

availability of the grievance procedure to inmates "regardless of classification."  (Doc. No. 7, Ex.

A, at 3).  Plaintiff contends that this language establishes that CCA grievance procedures were

unavailable to inmates, such as Horton, who have been transferred to other facilities.  (Doc. No.

24, at 9).

Transfer to another facility may render remedies unavailable if the first facility at which

-16-

the incident occurred does not have a procedure in place to receive grievances from another facility. See Bradley v. Washington, 441 F. Supp. 2d 97, 102-03 (D.D.C. 2006) (denying motion to dismiss for lack of exhaustion where inmate was transferred from jail to federal system and jail's grievance procedures made no provision for submission of complaint for transferred persons); see also Camarena v. Maricopa County Corr. Health Servs., No. CV 06-0318-PHX-MHM, 2007 WL 949604, at *3 (D. Ariz Mar. 23, 2007); Heilscher v. Arpaio, No. CV 06-1779-PHX-DGC, 2007 WL 625919, at *2 (D. Ariz. Feb. 26, 2007); Mellender v. Dane County, No. 06-C-298-C, 2006 WL 3113212, at *4 (W.D. Wis. Oct. 27, 2006). If CCA's grievance procedure did not have a method through which Horton could attempt to file a grievance from the DeBerry facility, then he would be unable to satisfy the final requirement of the above analysis—to file an untimely grievance and be denied—through no fault of his own.

CCA has not presented any evidence nor made any assertions that their grievance procedure remained accessible to Horton after his transfer from the CCA Detention Facility. Absent this evidence in the record, CCA has not satisfied its burden for the purposes of this Motion. The Court finds that there remains a genuine issue of material fact regarding whether CCA's grievance procedure remained available to Horton at the DeBerry facility. Because Plaintiff's claims regarding Horton's medical care and the conditions of his confinement continued until the date of his transfer on April 11, 2008, they were not affected by the seven day filing requirement in CCA's grievance procedure and thus the grievance process time-period had not expired before he became unable to communicate and subsequently left the facility. Therefore, the portion of Plaintiff's Eighth Amendment claims (Causes of Action II and III) regarding Horton's medical care and the conditions of his confinement will not be dismissed for

-17-

failure to exhaust administrative remedies. CCA's Motion for Summary Judgment based on failure to exhaust this portion of Plaintiff's Causes of Action II and III is **DENIED**.

The Court will not dismiss Plaintiff's First Amendment claim (Cause of Action IV) for failure to exhaust. CCA's grievance procedure requires the filing of an informal grievance within seven days of the alleged incident, but states that the time for filing will begin from the date that the problem or incident "became known to the inmate." (Doc. No. 7, Ex. A, at 3). There is no evidence in the record that indicates Horton was aware that he was being denied access to incoming mail by CCA until after he became unable to communicate and was subsequently transferred to the DeBerry facility. Without presenting any evidence that Horton was aware of the alleged denial of mail access while CCA's grievance procedure remained available to Horton, CCA has not met its burden for the purposes of summary judgment on the grounds of failure to exhaust. Therefore, the Court cannot find that Horton failed to exhaust his available administrative remedies with regard to his First Amendment claim as a matter of law. CCA's Motion for Summary Judgment on Horton's First Amendment claim based on failure to exhaust is **DENIED**.

However, Plaintiff has failed to exhaust available administrative remedies regarding the portion of Plaintiff's Eighth Amendment claims (Causes of Action II and III) pertaining to the alleged assaults on Horton by inmates and prison officials. The alleged assaults occurred before the period during which Horton became unable to file a grievance. Because Horton was able to communicate and was aware of the alleged assaults on his person, CCA's grievance procedure remained available to him throughout the seven-day filing period. Therefore, this Court will continue to address Plaintiff's defenses to CCA's failure to exhaust allegations as they pertain to

-18-

the alleged assaults on Horton only (Plaintiff's Eighth Amendment claims, Causes of Action II and III).

### 2. Exhaustion of all available administrative remedies

Plaintiff contends that she has exhausted the available administrative remedies on Horton's behalf. Plaintiff contends that requesting and obtaining a transfer from the CCA Detention Facility to the DeBerry facility granted "the ultimate relief which was sought." (Doc No. 24, at 14). However, as noted above, the Supreme Court mandates that a plaintiff properly exhaust all available administrative remedies through compliance with the prison facility's procedures. See Woodford, 548 U.S. at 90; Jones, 549 U.S. at 218. In the instant case, this requires compliance with CCA's grievance procedure. CCA's grievance procedure does not include requesting a transfer as a possible remedy for grievances regarding alleged assaults, an inmate's mental health treatment, or conditions of confinement. A main purpose of the PLRA exhaustion requirement is to afford the agency an opportunity to correct its own mistakes with respect to the programs it administers and to discourage disregard of the agency's procedures. Woodford, 548 U.S. at 89; see also Ruggiero v. County of Orange, 467 F.3d 170, 176 (2d Cir. 2006) (requiring a prisoner to grieve his mistreatment before filing a suit despite the relief afforded by his transfer in order to give prison officials an opportunity to address his complaint). Obtaining a transfer from CCA, while it may have resolved Plaintiff's concerns for Horton's medical care, did not communicate to CCA the allegedly faulty conditions nor did it follow their established procedures. The award of a transfer does not exhaust Horton's administrative remedies for the purposes of the PLRA.

### 3. CCA's waiver of this affirmative defense

-19-

Failure to exhaust administrative remedies is an affirmative defense. <u>See</u> <u>Jones</u>, 549 U.S. at 216. CCA raised this defense in their initial motion to dismiss, their first responsive pleading, and throughout their subsequent filings. Thus, CCA has not waived their defense of failure to exhaust. <u>See</u> <u>Old Line Life Ins. Co. of America v. Garcia</u>, 418 F.3d 546, 550 (6th Cir. 2005) (discussing district court's role in determination of affirmative defense waiver); <u>see</u> <u>also</u> <u>Johnson v. Rowley</u>, No. 07-2213-PR, 2009 WL 1619401, at *3 (2d Cir. June 11, 2008) (citing <u>Johnson v. Testman</u>, 380 F.3d 691, 695-96 (2d Cir. 2004)).

The Court finds that Plaintiff failed to exhaust the portion of Plaintiff's Eighth Amendment claims (Causes of Action II and III) which pertain to alleged assaults on Horton by other inmates and facility officers. If a complaint contains claims that are exhausted and claims that are not exhausted, the court should dismiss the non-exhausted claims and proceed with the remaining claims which are compliant with the PLRA's exhaustion requirement. <u>Grinter v. Knight</u>, 532 F.3d 567, 578 (6th Cir. 2008) (citing <u>Jones</u>, 549 U.S. at 219-24). Therefore, CCA's summary judgment motion for failure to exhaust administrative remedies with respect to the alleged assaults on Horton in Causes of Action II and III is **GRANTED**. The Court will address Plaintiff's remaining claims.

### B. Physical Injury Requirement

The PLRA applies to Eighth Amendment claims for emotional or mental damages. <u>See</u> <u>Jarriet v. Wilson</u>, 162 F. App'x 394, 400 (6th Cir. 2005) (citing <u>Grisson v. Davis</u>, 55 F. App'x 756, 758 (6th Cir. 2003)). The PLRA requires a prior showing of physical injury before a prisoner may bring a federal civil action for emotional or mental injury. 42 U.S.C. § 1997e(e)

("No federal civil action may be brought by a prisoner confined in a . . . correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."); see Merchant v. Hawk Sawyer, 37 F. App'x 143, 145-46 (6th Cir. 2002) (denying inmate's Eighth Amendment claim because the inmate did "not allege that he was subject to any physical injury as a result of the actual conditions in the segregation unit").  Although the requisite physical injury need not be significant, it must be more than *de minimus*.  Adams v. Rockafellow, 66 F. App'x 584, 586 (6th Cir. 2003).

In her complaint, Plaintiff alleged physical injury to Horton due to the above mentioned altercations with other inmates and assaults by prison officials, during which Horton was sprayed with chemical spray and, in one incident, allegedly beaten by a lieutenant at booking.  However, as noted above, the portion of Plaintiff's Eighth Amendment claims that pertain to alleged assaults on Horton by other inmates and prison staff fail due to non-exhaustion.  Outside of those assaults, Plaintiff alleges Horton "appeared confused and disoriented" as the only other specific injury.  (Doc. No. 24, at 23).  The mental state of confusion and disorientation is at most *de minimus*, if it could be characterized as a physical injury at all.  Thus, outside of the alleged assaults, Plaintiff has not demonstrated any actual physical injury caused by the Detention Facility's allegedly inadequate mental health care or prison conditions.  Therefore, CCA's motion for summary judgment for failure to demonstrate a physical injury pursuant to § 1997e(e) is **GRANTED** on Plaintiff's Eighth Amendment claims (Causes of Action II and III).

### C. Respondeat Superior Theory

CCA contends that Plaintiff's Eighth and First Amendment claims (Causes of Action II,

-21-

III, and IV) should be dismissed because Plaintiff cannot hold CCA liable for the alleged

constitutional violations of its employees on a respondeat superior theory. Plaintiff's Eighth

Amendment claims (Causes of Action II and III) have been dismissed in part for failure to

exhaust administrative remedies and in part for failure to show a physical injury. Therefore, the

Court will analyze CCA's liability for Plaintiff's First Amendment claim (Cause of Action IV)

only.

Private corporations that operate prisons are "persons" for the purposes of § 1983 and

may be held liable under § 1983. See Street v. Corr. Corp. of America, 102 F.3d 810, 818 (6th

Cir. 1993) (recognizing CCA as a "person" for the purposes of § 1983); see also Thomas v.

Coble, 55 F. App'x 748, 748 (6th Cir. 2003) (same). However, government officials may not be

held liable under § 1983 for the unconstitutional conduct of their subordinates under a theory of

respondeat superior. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948 (2009) (citing Monell v. New York

City Dept. of Soc'l Servs., 436 U.S. 658, 691 (1978)). Because vicarious liability is inapplicable

to § 1983 claims, plaintiffs must plead that each defendant, through its own actions, has violated

the Constitution; the necessary facts will vary for each constitutional provision at issue. Id. In

the instant action, CCA's liability must be premised on some policy that caused a deprivation of

Horton's First Amendment rights. See Starcher v. Corr. Med. Sys., Inc., 7 F. App'x 459, 465

(6th Cir. 2001).

Although Plaintiff articulates evidence that could suggest a CCA policy regarding

Plaintiff's Eighth Amendment claims, Plaintiff does not describe any specific CCA policy that

caused a violation of Horton's First Amendment rights through improper mail restrictions.

Plaintiff makes only broad assertions aimed at the constitutional claims, not the First Amendment

-22-

claim specifically, stating that "the policies and customs of [CCA] were the driving force behind the Constitutional deprivations from which Mr. Horton suffered." (Doc. No 24, at 20). Plaintiff states that "the need for . . . correspondence was so obvious and the inadequacy was so likely to result in the violation of Mr. Horton's constitutional rights." (Id.). Plaintiff further contends that CCA's failure to provide mail privileges, in itself, "may fairly be said to represent a policy for which [CCA] is responsible." (Id.). Plaintiff has not asserted any facts that indicate an official policy or custom. Isolated incidents "are not the persistent, often repeated constant violations that constitute custom and policy" as required for § 1983 liability. Campbell v. City of San Antonio, 43 F.3d 973, 977 (5th Cir. 1995) (citing Bennett v. City of Slidell, 728 F.2d 762, 768 (5th Cir. 1984)). Thus, Plaintiff has failed to describe, or even allege, a particular CCA policy which caused a deprivation of Horton's First Amendment rights. Therefore, CCA's motion for summary judgment on Plaintiff's First Amendment claim (Cause of Action IV) is **GRANTED**.

### D. Intentional Infliction of Emotional Distress Claim

CCA contends that the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claim for intentional infliction of emotional distress because all federal claims have been dismissed. A district court has broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims. Musson Theatrical, Inc. v. Fed. Exp. Corp., 89 F.3d 1244, 1254 (6th Cir. 1996) (citing Transcon. Leasing, Inc. v. Michigan Nat'l Bank of Detroit, 738 F.2d 163, 166 (6th Cir. 1984)); see e.g., Southerland v. Haraway Mgmt. Co., 41 F.3d 250, 256-57 (6th Cir. 1994) (affirming the district court's exercise of discretion to grant summary judgment on one supplemental claim and to dismiss without prejudice another supplemental

-23-

claim).

With the dismissal of all federal claims, the Court must determine whether or not to retain jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(c)(3) ("The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."). While the decision to retain jurisdiction is discretionary, the strong federal custom since United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966), has been to dismiss those claims in order to permit state courts to decide their own law, as is their prerogative. U.S. ex rel. Scott v. Metro. Health Corp., 374 F. Supp. 2d 626, 647 (W.D. Mich. 2005) (granting defendant's summary judgment motion on federal claims and dismissing supplemental state claims without prejudice).

When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims. Musson, 89 F.3d at 1254 (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350-51 (1988)). In the instant case, the Court has not reached any of the merits of Plaintiff's intentional infliction of emotional distress claim. This Court's interest in maintaining the action in federal court is outweighed by the state court's interest in deciding their own law. Therefore, the Court declines to exercise supplemental jurisdiction pursuant to § 1367(c)(3) over Plaintiff's state law claim. Plaintiff's intentional infliction of emotional distress claim is **DISMISSED without prejudice**.


## IV. CONCLUSION

For the reasons stated herein, CCA's Motion for Summary Judgment on Plaintiff's First and Eighth Amendment claims (Counts II, III, and IV) is **GRANTED**. Plaintiff's intentional

-24-

infliction of emotional distress claim (Count I) is **DISMISSED WITHOUT PREJUDICE**.

It is so ORDERED.

Entered this the _____10th_____ day of ~~July~~ August, 2009.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT